IN THE UNITED STATES DISTRICT COURT
IN AND FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID LAMBERT,

Plaintiff,

-vs-

SEMINOLE COUNTY
SCHOOL BOARD,

CASE NO.:  6:15-CV-78-ORL-18-DAB

Defendant.

_____/

## PLAINTIFF, DAVID LAMBERT'S, RESPONSE IN OPPOSITION TO DEFENDANT'S [DOC. 24] MOTION FOR SUMMARY JUDGMENT

Plaintiff, DAVID LAMBERT, by and through his undersigned counsel, hereby responds in opposition to Defendant's, SEMINOLE COUNTY SCHOOL BOARD ("SCSB"), [Doc. 24] Motion for Summary Judgment, and would state as follows:

### I.     INTRODUCTION

As set forth in Plaintiff's [Doc. 22] Motion for Summary Judgment, Defendant has violated the TCPA in this case because it made calls using a Callplus+ dialing system that used a prerecorded voice.  Defendant has also violated the TCPA because its dialing system also qualifies as an "automatic telephone dialing system" ("ATDS") under the TCPA.  Defendant attempts to argue that because its dialing system allegedly does not meet the technical definition of an ATDS, that summary judgment is appropriate; however, that argument is misplaced because it is undisputed that Defendant's dialing system used a prerecorded voice for each and every call it made to Plaintiff's cell phone number.  And that fact alone makes summary judgment proper in favor of Plaintiff.  Finally, the type of call and/or content of the call is irrelevant for the purpose of the TCPA's restriction on calls to cell phone numbers.  The fact that

the calls in question were calls concerning substitute teaching is irrelevant for the purpose of TCPA liability, because as to wireless phone numbers, the TCPA's restrictions apply to *any* call. The TCPA is a strict liability statute, and the plain language of the TCPA places no exemption from liability because the calls in question concerned substitute teaching. The TCPA prohibits any person from making "… *any* call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system *or* an artificial *or* prerecorded voice … to any telephone number assigned to a … cellular telephone[.]" 47 U.S.C. § 227(b)(1)(A)(iii)(emphasis added). The only affirmatives defenses applicable in this action are whether the calls were made for emergency purposes, or if they were made with the prior express consent of the called party, here Plaintiff. Accordingly, summary judgment in favor of Plaintiff is appropriate on both liability and damages in this case, and Defendant's [Doc. 24] Motion for Summary Judgment should be denied.

## II.   ARGUMENT

### A.   Defendant's Callplus+ Dialing System Qualifies as an ATDS

Even though Defendant's has violated the TCPA because its Callplus+ dialing system used a prerecorded voice, and therefore summary judgment should be entered in favor of Plaintiff based on that fact alone, Defendant's Callplus+ dialing system also qualifies as an ATDS.

Defendant's argument is that because the Callplus+ dialing system allegedly does not have a random or sequential number generator, it does not meet the definition of an ATDS. The Federal Communications Commission has repeatedly spoken on the issue of whether or not a dialing system must have random or sequential number generator in order to qualify as an

ATDS.  FCC rulings concerning the TCPA have the force and effect of binding law, and district

courts do not have jurisdiction to review the validity of an FCC order.  See *Mais v. Gulf Coast*

*Collection Bureau, Inc.*, 768 F.3d 1110 (11th Cir. 2014).  Plaintiff submits that this is particularly

so concerning matters committed to the FCC, which has rulemaking authority when it comes to

the TCPA, and which involve the agency's technical expertise like the issue of what qualifies as

an ATDS given the technological advances made in the autodialer industry since the enactment

of the TCPA in 1991.  *Loggerhead Turtle v. County Council of Volusia County, Fla.*, 148 F.3d

1231, 1259-60 (11th Cir. 1998); see also, *Shehan v. Wells Fargo Bank, N.A.*, --- F. Supp. 3d ---,

2014 WL 5529365, *2 (N.D. Ala. Nov. 3, 2014).

In Plaintiff's [Doc. 22] Motion for Summary Judgment, at pages 16 through 20, Plaintiff

has addressed the issue in detail.  In its 2003 Report, the FCC stated that an ATDS would include

a dialing system with the characteristics of "… hardware, when paired with certain software, has

the capacity to store or produce numbers and dial those numbers at random, in sequential order,

*or from a database of numbers." See In re Rules & Regulations Implementing the Telephone*

*Consumer Protection Act of 1991, Report and Order,* 18 F.C.C. Rcd. 14091, ¶131, 2003 WL

21517853 (F.C.C. July 3, 2003) (*"2003 Report"* ).  Again, and most recently in its July 10, 2015

Order, FCC stated reiterated its previous statement as,

> "10.  We reaffirm our previous statements that dialing equipment generally has
> the capacity to store or produce, and dial random or sequential numbers (and thus
> meets the TCPA's definition of "autodialer") even if it is not presently used for
> that purpose, **including when the caller is calling a set list of customers**." *In*
> *the Matter of Rules and Regulations Implementing the Telephone Consumer*
> *Protection Act of 1991*, 30 FCC Rcd. 7961, 2015 WL 4387780, *6 (FCC)(July 10,
> 2015)(hereinafter "2015 FCC Order")(emphasis added).

Here, Defendant's Callplus+ dialing system not only had the capacity to store phone numbers,

but it did in fact do so.  (Depo. Rickman, p. 29, lines 3-8).  The Callplus+ dialing system had the

3

capacity to dial numbers in random and in priority (i.e. sequential) order, and did in fact do so. (Depo. Rickman, pp. 37, lines 17-25; p. 38, lines 1-11; p. 38, lines 12-25).  The Callplus+ dialing system calls numbers from the list of telephone numbers stored on the C drive of the computer, and does so automatically.  (Depo. Rickman, pp. 29, lines 17-23; p. 30, lines 14-25).

Defendant also argues that the Callplus+ dialing system purportedly requires a teacher to create a message and the dates and times the messages would be sent.  This is misleading.  Each and every call made to Plaintiff's cell phone number by the Callplus+ dialing system was not a specifically-tailored prerecorded message sent by a teacher needed a substitute.  Rather, each and every call was a prerecorded message played on a loop asking him to press a #1 or a #2, and then a 5-digit employee identification code; which he did not have.  Plaintiff was never able to interact with a live person during any one of the calls, because the system precludes any interaction with a live person.  (Depo. Rickman, p. 62, lines 19-25).  The Callplus+ dialing system simply does not know the difference between a live person and an answering machine, and simply keeps going through the same prerecorded prompts for each and every call made. (Depo. Rickman, p. 17, lines 13-19; p. 22, lines 21-25; p. 23, lines 1 & 16-25; p. 51, lines 15-25; p. 52, lines 1-11; and p. 64, lines 3-23).

Not only did Defendant's Callplus+ dialing system have the capacity to dial random or sequential numbers by virtue of its random and priority call settings, but it also called those numbers from a preprogrammed list of numbers to be called.

B.     **The Callplus+ Dialing System Stores Numbers to Be Called**

As stated by the FCC in its most recently in its July 10, 2015 Order,

"10.  We reaffirm our previous statements that dialing equipment generally has the capacity to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") even if it is not presently used for

that purpose, **including when the caller is calling a set list of customers**." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 2015 WL 4387780, *6 (FCC)(July 10, 2015)(hereinafter "2015 FCC Order")(emphasis added).

Here, there is no dispute that Defendant's Callplus+ dialing system calls telephone numbers that are stored on its hard drive, or "C" drive.  The Callplus+ dialing system calls telephone numbers from this list of telephone numbers stored on the C drive within the Callplus+ folder.  (Depo. Rickman, p. 29, l. 3-8; Depo. Harper, p. 16, l. 1-8).  The list is a stored list of possible substitute teachers.  (Depo. Harper, p. 15, l. 12-17).  The numbers stored on the list remain on the C drive until they are removed or edited.  (Depo. Rickman, p. 29, l. 9-16; Depo. Harper, p. 15, l. 23-25).  The Callplus+ dialing system automatically calls telephone numbers from that list.  (Depo. Rickman, p. 29, l. 17-23; p. 30, l. 14-25).  The Callplus+ dialing system has worked the same way the entire time the Defendant has used it.  (Depo. Rickman, p. 31, l. 13-21).

C.     **The Callplus+ Dialing System Did Not Involve "Human Intervention"**

The dates(s) and times(s) of each call made by the Callplus+ dialing system is determined by algorithm, configured in the preprogramming stages of the system.  (Depo. Rickman, p. 37, lines 17-25; p. 38, lines 1-11).  It is the algorithm, not a teacher, that determines if the call is made in random order, or in a priority order.  (Depo. Rickman, p. 39, lines 11-14).  Once the preprogramming is complete, the Callplus+ dialing system makes calls automatically.  (Depo. Rickman, p. 48, lines 24-25; p. 49, lines 1-22).  Further, it is the Callplus+ dialing system that makes these calls automatically, as opposed to an employee of Defendant making said calls manually.  (Depo. Rickman, p. 62, lines 14-18).  An example of just how many of the automatic calls (i.e. 11 calls between the hours of 16:31:23 pm and 21:47:04 pm) that the Callplus+ dialing

5

system made automatically to Plaintiff's cell phone number on a given day can be seen in the transaction log of calls on April 25, 2013.   (Depo. Rickman, *Exhibit #11*, Bates Nos. SCSBRKC000727 through SCSBRKC000741).

The alleged "human involvement" in the preprogramming stage where the telephone numbers of potential substitutes are loaded into the Callplus+ dialing system and/or when the system is configured to make calls in the evening hours, early morning hours, or both, is not the type of "human involvement" that would serve to disqualify the Callplus+ dialing system as an ATDS.  The fact that humans may be involved in the process of creating the list of numbers to be called is simply irrelevant. See *Sterk v. Path*, 46 F. Supp. 3d 813 (N.D. Ill. 2014); *Moore v. Dish Network, LLC*, 57 F. Supp. 3d 639, 654 (N.D. W. Va. Oct. 15, 2014).

### C.      The Callplus+ Dialing System Uses a Prerecorded Voice

The TCPA imposes liability where a party either uses an ATDS or uses a prerecorded or artificial voice.  47 U.S. C. § 227(b)(1)(A); *Lardner v. Diversified Consultants, Inc.*, 17 F. Supp. 3d 1215, 1222 (S.D. Fla. April 30, 2014).  Accordingly, should this Court find that the Callplus+ dialing system not qualify as an ATDS, Defendant is nonetheless liable for violating the TCPA because its dialing system used a prerecorded voice for each and every one of the 537 calls it made to plaintiff's cell phone number.  The TCPA prohibits any person from making "… *any* call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system *or* an artificial *or* prerecorded voice … to any telephone number assigned to a … cellular telephone[.]"   47 U.S.C. § 227(b)(1)(A)(iii)(emphasis added).  As this Court has recently stated, for a plaintiff to "... succeed on his TCPA claim, Plaintiff must establish that Defendant placed calls to his cellular

6

phone using an ATDS *or* artificial *or* prerecorded voice." *Estrella v. LTD Fin. Svcs., LP*, 2015 US Dist. LEXIS 148249 (M.D. Fla. Nov. 2, 2015)(emphasis added).

Here, each and every call made by Defendant's Callplus+ dialing system used a prerecorded voice, regardless of whether the call was answered by a live person, or by an answering machine. (Depo. Rickman, p. 14, l. 4-6; p. 17, l. 20-25; p. 18, l. 1-25; p. 19, l. 1-5; p. 65, l. 5-11; Depo. Harper, p. 11, l. 9). This is because the Callplus+ dialing system does not know the difference between a live person or an answering machine; and just keeps going through the same prerecorded voice prompts regardless of how the call is answered. (Depo. Rickman, p. 17, 13-19; p. 51, l. 15-25; p. 52, l. 1-3; p. 64, l. 3-23). A person called by the Callplus+ dialing system is never able to interact with a live person. (Depo. Rickman, p. 62, l. 19-25). Regardless of whether the phone call made by the Callplus+ dialing system is answered by a live person or by an answering machine, the Callplus+ dialing system goes through the same procedures. (Depo. Rickman, p. 51, l. 24-25; p. 52, l. 1-3; p. 65, l. 5-20; p. 68-l. 71). The Callplus+ dialing system will continue to play prerecorded messages on a loop until it times out and hangs up. (Depo. Rickman, p. 22, l. 21-25; p. 23, l. 1 & 16-25; p. 52, l. 4-11; p. 68, l. 1-25; p. 69, l. 1-25). The Callplus+ dialing system has worked the same way the entire time the Defendant has used it. (Depo. Rickman, p. 31, l. 13-21).

When a dialing system uses a prerecorded voice during a call made without the prior express consent of the called party, that call violates the TCPA. *Ybarra v. Dish Network, LLC*, 2015 U.S. App. LEXIS 18242, *7-8 (5th Cir. 2015). Because the TCPA provision is written in the disjunctive, a plaintiff can state a claim under the TCPA by alleging the use of (1) an artificial or prerecorded voice or (2) an ATDS. *Vaccaro v. CVS Pharmacy, Inc.*, 2013 WL 3776927, at *1 and at *n. 2 (S.D. Cal. July 16, 2013); *see also Warnick v. Dish Network, LLC*,

2014 U.S. Dist. LEXIS 138381, *36-37 (D. Colo. Sept. 30, 2014); *Holcombe v. Credit Protection Ass'n, LP*, No. 14-cv-14, 2014 U.S. Dist. LEXIS 122054, 2014 WL 4252277, at *3 (M.D. Ga. Aug. 28, 2014); *Lardner v. Diversified Consultants Inc.*, No. 13-cv-22751, 17 F. Supp. 3d 1215, 2014 U.S. Dist. LEXIS 64205, 2014 WL 1778960, at *6 (S.D. Fla. May 1, 2014); *Vance v. Bureau of Collection Recovery LLC*, No. 10-cv-06342, 2011 U.S. Dist. LEXIS 24908, 2011 WL 881550, at *3 (N.D. Ill. March 11, 2011).

Here, Defendant made non-emergency calls to Plaintiff's cellular telephone number without his prior express consent, and each one of those 537 calls used a prerecorded voice. Accordingly, Defendant has violated the TCPA and summary judgment is appropriate.

### E.    The TCPA Applies to *Any* Call

Defendant's calls to Plaintiff's cell phone violate the plain language of the TCPA, which is not limited to just telemarketing, or debt collection calls.   While Defendant makes it a point to argue in its [Doc. 24] Motion for Summary Judgment that its calls were simply "…informational, non-marketing calls…," such a point is irrelevant.   Its calls were made to Plaintiff's cellular telephone number.   The only exemptions in the TCPA that apply to calls to cellular phones are if the calls were made for emergency purposes or if they were made with the prior express consent of Plaintiff.   *Dell v. Gager Fin. Servs., LLC*, 727 F. 3d 265, *273 (3rd Cir. 2013).   While Congress was concerned by telemarketing calls, that was not its only concern. When it enacted the TCPA, Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, *regardless of the type of call*", and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243, §§ 2 (10-13) (Dec. 20, 1991) (emphasis added), codified

at 47 U.S.C. § 227; see also, *Warnick v. Dish Network, LLC*, 2014 U.S. Dist. LEXIS 138381, *40-41 (D. Colo. Sept. 30, 2014). The TCPA is essentially a strict liability statute that does not require any intent for liability except when awarding treble damages. *Alea London Ltd. v. Am Home Servs., Inc.*, 638 F.3d 768, 776 (11th Cir. 2011). Accordingly, these calls fall squarely within the purview of the TCPA, an act designed to eliminate unwanted, and intrusive, prerecorded voice calls. The TCPA's sponsor, Senator Hollings, described the purpose behind the TCPA, describing the kind of calls made here as "the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." See *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1256 (11th Cir. 2014)(citing to 137 Cong. Rec. 30,821 (1991)).

Regardless of the content of the call or why it was made, liability should be imposed under the TCPA against Defendant because it made calls using a prerecorded voice to Plaintiff's cell phone number without Plaintiff's prior express consent.

### G. Damages and Plaintiff's Claim

Contrary to Defendant's characterization of Plaintiff's claim, this case is not an "…opportunistic action against…" Defendant. Here, Plaintiff made numerous attempts to try to stop Defendant from violating the law and to stop its harassing phone calls. Defendant's calls were made in the early morning hours, into the late evening hours, and as many as 11 times in a day. (Depo. Rickman, *Exhibit #11*, Transaction Log/Call Log). Defendant's calls never allowed him to interact with a live person; so he was constantly bombarded by these calls, at inconvenient hours, multiple times a day, without any ability to get these calls to stop. When he called and finally reached an employee with the Superintendent of Schools of Defendant, he was

9

told that they did not believe that there was much that could be done, because they were using an automated service to make these calls.  (Depo. Plaintiff, p. 29, lines 13-15).  Plaintiff made multiple calls to Defendant on October 22, 2013 to inform Defendant that he was not "Ololade Adeyemi" and to stop the calls, and his cell phone records prove it.  (Plaintiff Depo, p. 24, lines 17-24; p. 27, lines 18-20; p. 29, lines 13-15; p. 40, lines 13-18; MetroPCS Call Detail Reports; **and Summary Report "D").**  Prior thereto, Plaintiff called Defendant's Callplus+ numbers (i.e. the numbers that were calling his cell phone) at least 39 times to try to get these calls to stop.  (See MetroPCS Call Detail Reports; see also **Summary Report "C"**).  However, Defendant's calls continued until September 4, 2014; even well after Plaintiff gave his March 26, 2014 pre-suit notice to Defendant of his intent to pursue a claim against Defendant for its violations of the TCPA.  (See attached **Exhibit "A"**).

### III.    CONCLUSION

There is no dispute that Defendant made 537 prerecorded voice calls to Plaintiff's cellular telephone number.  There is no dispute that those calls were made without the prior express consent of Plaintiff, the called party.  There is no dispute that these calls were not made for emergency purposes.  In addition, Defendant's Callplus+ dialing system is a system that qualifies as an ATDS under the TCPA.  Accordingly, Defendant's [Doc. 24] Motion for Summary Judgment should be denied, and Plaintiff's [Doc. 22] Motion for Summary Judgment should be granted, on both liability and damages.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 16th day of December, 2015, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following CM/ECF participants: Francis H. Sheppard, Esq. and Tim Bench, Esq., Rumberger, Kirk & Caldwell, P.A., Lincoln Plaza, Suite 1400, 300 South Orange Ave., Orlando, FL 32802.

/s/ *Michael Vitoria*
Michael J. Vitoria, Esquire
Morgan & Morgan, Tampa, P.A.
One Tampa City Center
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
Tele: (813) 223-5505
Fax: (813) 223-5402
MVitoria@ForThePeople.com
KReynolds@ForThePeople.com
Florida Bar #: 0135534
Attorney for Plaintiff