UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DAVID LAMBERT,

    Plaintiff,

v.                                               Case No: 6:15-cv-78-Orl-18DAB

SEMINOLE COUNTY SCHOOL
BOARD,

    Defendant.

## ORDER

THIS CAUSE comes for consideration on Plaintiff David Lambert's Motion for Summary Judgment as to Count I of the Complaint (Doc. 22) and Defendant Seminole County School Board's (the "School Board") Motion for Summary Judgment (Doc. 24) (collectively, "the Motions"). Both Lambert (Doc. 28; Doc. 32) and the School Board (Doc. 29; Doc. 31) filed responses and replies to the Motions. For the reasons that follow, the School Board's motion will be granted and Lambert's motion will be denied.

### I. BACKGROUND

This case concerns a series of calls made by the School Board to Lambert's cellular telephone. (Doc. 22 at 2.) Around the time Lambert activated his cell phone—February 24, 2013—he started receiving automated phone calls from the School Board asking for a substitute teacher named Olalade Adeyemi. (*Id.* at 4.) Each call was placed through the Callplus + dialing system ("Callplus +"), which utilizes prerecorded voice prompts and prerecorded voice messages; a person called by the system is unable to interact with a live person. (*Id.* at 5, 9.) Designed to assist school districts with securing substitute teachers, Callplus + automatically calls telephone numbers previously entered into its system by a school district. (*Id.* at 6-8.) Once entered into the

Callplus + database, Callplus + will continue to call a number until a school district manually removes the number from the system. (*Id.* at 8.) In order to engage Callplus +'s automated prompts, someone must know a five (5) digit identification code, which is assigned to a substitute teacher by a school district. (*Id.* at 5-6.)

Despite receiving 537 calls from the School Board's Callplus + system between August 20, 2013 and April 30, 2014, Lambert contends that he "is not 'Ololade Adeyemi, he does not know 'Ololade Adeyemi,' has never been a substitute teacher for [the School Board], has never applied to [the School Board] to be a substitute teacher, and has never been assigned a 5 digit employee identification code by [the School Board]." (*Id.* at 9, 11.) Lambert further asserts that he never granted the School Board prior express consent to call him. (*Id.* at 5.) On January 20, 2015, Lambert filed a one-count complaint against the School Board, alleging violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq* (the "TCPA"). (Doc. 1.) Both Lambert (Doc. 22) and the School Board (Doc. 24) now ask the Court to enter summary judgment in their favor.

## II. LEGAL STANDARD

A court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The moving party may rely solely on the pleadings to

satisfy its burden. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). A non-moving party bearing the burden of proof, however, must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories, or admissions that designate specific facts indicating there is a genuine issue for trial. *Id.* at 324. "A fact is material only when the dispute over it has the potential to change the outcome of the lawsuit under the governing law if found favorably to the nonmovant." *Zaben v. Air Prods. & Chems., Inc.*, 129 F.3d 1453, 1455 (11th Cir. 1997). If the evidence offered by the non-moving party is merely colorable, or is not significantly probative, the Court may grant summary judgment. *Anderson*, 477 U.S. at 249-50. Put another way, "unsupported speculation [] does not meet a party's burden of producing some defense to a summary judgment motion [because] [s]peculation does not create a *genuine* issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (emphasis in original) (internal quotation marks omitted) (citation omitted). Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case "with respect to which [the party] has the burden of proof." *Celotex*, 477 U.S. at 323.

### III. ANALYSIS

The parties argue that the Court may grant summary judgment on the basis of several issues. (*See* Doc. 22; Doc. 24; Doc. 28; Doc. 29; Doc. 31; Doc 32.) But because resolution of a prerequisite question—the scope of the TCPA—dictates entry of summary judgment against Lambert, the Court has no occasion to reach the parties' additional arguments.

Congress enacted the TCPA to "protect [] telephone subscriber privacy rights by restricting certain commercial solicitation and advertising uses of the telephone and related telecommunications equipment." H.R. Rep. No. 102-317, at 5 (1991). In particular, Congress

3

sought to quell "outrage[] [over] the proliferation of intrusive, nuisance calls to [Americans'] homes from telemarketers." H.R. Rep. No. 102-317, at 2 (1991). To that end, the TCPA makes it unlawful for "any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . ." 47 U.S.C. § 227(b)(1)(A)(iii). Though the TCPA itself does not define "person," the Communications Act, which the TCPA amended, defines a "person" as an "individual, partnership, association, joint-stock company, trust or corporation." 47 U.S.C. § 153(39). Violations of the TCPA are actionable through the statute's private right of action, which provides for "an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater. . . ." 47 U.S.C. § 227(b)(3)(B). And, "[i]f the court finds that the defendant willfully or knowingly violated [the TCPA], the court may, in its discretion," award treble damages. 47 U.S.C. § 227(b)(3)(C).

The School Board posits that "the TCPA does not apply to governmental entities." (Doc. 29 at 2.) Lambert, for his part, asks the Court not to consider the School Board's inapplicability argument because it was not timely raised. (Doc. 32 at 1.) In the alternative, Lambert insists that the TCPA applies to the School Board because Florida waives its sovereign immunity in tort actions, because there is case law subjecting local governments to liability for violations of federally protected rights, and because certain Federal Communications Commission ("FCC") statements reference school closing calls. (*Id.* at 1-3.)

Since the plain meaning of the TCPA's liability provision excludes governmental entities—an observation supported by the statute's legislative history—the School Board cannot be subjected to a TCPA lawsuit. As an initial matter, the Court's consideration of the scope of the

4

TCPA is not limited by the School Board's failure to raise the issue in its initial summary judgment motion; in fact, the Court is required to affirmatively establish its own subject matter jurisdiction, regardless of whether a party challenges it. *See Blankenship v. Gulf Power Co.*, 551 Fed. App'x 468, 470 (11th Cir. 2013) ("Federal courts have limited jurisdiction and are 'obligated to inquire into subject matter jurisdiction sua sponte whenever it may be lacking.") (citation omitted). Of course, the Court lacks subject matter jurisdiction if the TCPA does not provide Lambert with a cause of action, so the Court is obliged to determine whether Lambert may properly bring his TCPA claim against the School Board. In any event, Lambert was afforded a sufficient opportunity to rebut the School Board's arguments in his reply brief.

Moving to the merits of the dispute, the Court concludes that the TCPA's cause of action is unavailable against the School Board. When interpreting a statute, a court first looks to the plain meaning of the statute in question. *See Moore v. Am. Fed'n of Television & Radio Artists*, 216 F.3d 1236, 1244 (11th Cir. 2000). Here, the question of the TCPA's applicability turns on the meaning of the word "person," given that the TCPA only proscribes certain calls made by *"person[s]* within the United States . . . ." 47 U.S.C. § 227(b)(1) (emphasis added). Though the TCPA itself does not offer a definition of "person," the Communications Act, of which the TCPA is a part, does. Within the meaning of the Communications Act, a "person" is an "individual, partnership, association, joint-stock company, trust, or corporation." 47 U.S.C. § 153(39). Conspicuously absent from this definition of "person" is any mention of governmental entities, let alone a phrase that may reasonably be construed as encapsulating a sovereign. Accordingly, the Court is led to the inevitable conclusion that governmental entities fall outside the ambit of the TCPA's cause of action.

Both common judicial practice and the TCPA's legislative history reinforce the Court's reading of "person" within the TCPA. Unless a statutory scheme evinces an affirmative intent to "bring state or nation within the scope of the law," courts will not read the term "person" to include a sovereign. *See Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 82-83 (1991) ("As we have often noted, 'in common usage, the term person does not include the sovereign, and statutes employing the word are ordinarily construed to exclude it.'") (citation omitted). Lambert does not point out, and the Court cannot locate, any evidence of congressional intent to "bring state or nation within the scope" of the TCPA, and thus, to depart from the default rule. If anything, the TCPA's legislative history suggests that Congress was concerned only with reigning in commercial solicitation calls from telemarketers. *See* H.R. Rep. No. 102-317, at 2, 5 (1991). Congress's findings focused on "the proliferation of intrusive, nuisance calls to [Americans'] homes from telemarketers," and the only mention of governmental entities comes in the form of pronouncements that imply governmental exclusion from the TCPA's prohibitions. *See* H.R. Rep. No. 102-317, at 2, 12, 25 (1991) (observing that "[the Congressional Budget Office] estimates that enactment of [the TCPA] would result in no cost to state or local governments" and "governmental and non-governmental entities should be permitted to use automated telephone dialing systems to provide [] health and safety warnings"). In sum, traditional canons of construction support an interpretation of "person" that excludes governmental entities, especially in light of the congressional intent found in the TCPA and its attendant legislative history.

Nonetheless, Lambert posits that Florida's limited waiver of sovereign immunity, certain case law interpreting "person" in other statutes to include governments, and a statement from the FCC, are sufficient to override the plain meaning of the TCPA. (Doc. 32 at 1-3.) They are not. Not only does the TCPA's plain meaning overcome Lambert's arguments, but each of his

6

arguments is unavailing. First, Lambert's sovereign immunity argument asks the Court to answer the wrong question; that is, Congress' intent, not Florida's, is the pertinent inquiry. If Congress did not intend to make the TCPA available against governmental entities, it is irrelevant that a governmental entity makes itself available for suit. Lambert's invocation of other "case law establishing local governments, municipal corporations, and school boards [], [as] 'persons' . . ." also misframes the analysis. (*See id.* at 2.) Each of the cases cited by Lambert involved different subject matter, different statutory schemes, different congressional intent, and different definitions of "person," than the case at bar. Because every statute is distinct, meanings and definitions cannot be blindly cross-applied as Lambert attempts to do. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 683-694 (1978) (analyzing the particular legislative history and purpose of the Civil Rights Act to ascertain the meaning of the phrase "persons"). Regardless, even if other cases suggest some sovereigns can, in some instances, be held liable for some torts, that fact is not enough to overcome the unambiguous plain meaning of the TCPA, the TCPA's legislative history and purpose, and traditional canons of judicial construction.

Finally, Lambert directs the Court to a sentence in an FCC document which states that certain calls delivering purely informational messages "such as school closings" require prior express consent, to claim that "the FCC has also suggested that school systems are subject to the TCPA . . . ." (Doc. 32 at 3.) However, the FCC's commentary falls well short of establishing that school districts are subject to the TCPA's limitations. While the FCC's discussion does mention school closings as a type of informational call that may require prior express consent, the agency never states that school boards themselves are subject to TCPA liability—an important distinction, since many organizations contract third-parties to make calls on their behalf. Moreover, the FCC's order is devoid of any additional discussion of governmental liability. And, most importantly, an

isolated sentence in an FCC rulemaking, vaguely referencing school closing calls, cannot trump congressional intent.

## IV. CONCLUSION

Since the plain meaning of the TCPA's definition of "person" excludes governmental entities, a fact ratified by the TCPA's congressional intent and well-established rules of judicial interpretation, Lambert is foreclosed from bringing a TCPA action against the School Board.

For the foregoing reasons, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant Seminole County School Board's Motion for Summary Judgment (Doc. 24) is **GRANTED**.

2. Plaintiff David Lambert's Motion for Summary Judgment as to Count I of the Complaint (Doc. 22) is **DENIED**.

3. The Clerk of the Court is directed to **ENTER JUDGMENT** accordingly in favor of Defendant Seminole County School Board. The Complaint (Doc. 1) is hereby **DISMISSED**.

**DONE AND ORDERED** at Orlando, Florida, this 21 day of January, 2016.

_____
G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies to:
Counsel of Record